```
 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF KENTUCKY
 2                   CENTRAL DIVISION AT LEXINGTON


 3
                              - - -
 4    UNITED STATES OF AMERICA,      .   Case No. 5:20-CR-00025
                                     .
 5              Plaintiff,           .
                                     .   Lexington, Kentucky
 6          - v -                    .
                                     .   Wednesday, December 10, 2020
 7    LARRY D. FOLEY JUNIOR,         .   9:00 a.m.
                                     .
 8              Defendant.           .
                                     - - -
 9
                     TRANSCRIPT OF SENTENCING PROCEEDINGS
10              BEFORE THE HONORABLE DANNY C. REEVES
                   UNITED STATES DISTRICT COURT JUDGE
11
                              - - -
12

13    For the United States:      DAVID A. MARYE, ESQ.
                                   Assistant U.S. Attorney
14                                 United States Attorney's Office
                                   260 West Vine Street, Suite 300
15                                 Lexington, Kentucky  40507

16    For the Defendant:          WILLIAM DANIEL CARMAN, ESQ.
                                   111 Church Street
17                                 Lexington, Kentucky  40507

18    Court Reporter:             LINDA S. MULLEN, RDR, CRR
                                   Official Court Reporter
19                                 101 Barr Street
                                   Lexington, Kentucky  40507
20

21    Proceedings recorded by mechanical stenography, transcript
      produced by computer.
22

23

24

25
```

```
 1            (Proceedings in open court, December 10, 2020, 9:00 a.m.)
 2        THE COURT:  Thank you.
 3        Madam Clerk, would you call the matter scheduled for 9:00,
 4    please.
 5        THE CLERK:  Yes, Your Honor.  Lexington Criminal Action
 6    Number 20-25, United States of America versus Larry D. Foley
 7    Junior, called for sentencing.
 8        THE COURT:  Thank you.
 9        Would counsel state their appearances, please.
10        MR. MARYE:  Yes, Your Honor.  Good morning.  David Marye
11    on behalf of the United States.
12        THE COURT:  Thank you.
13        Mr. Carman.
14        MR. CARMAN:  Good morning, Your Honor.  If it please the
15    Court, Dan Carman here for my client, Larry Foley Junior,
16    seated to my right.
17        THE COURT:  This matter is scheduled for sentencing this
18    morning.  Before we proceed with the hearing, let me first
19    confirm that Mr. Foley's had the opportunity to review his
20    presentence report and also to discuss the report with his
21    attorney to his satisfaction; is that correct?
22        MR. CARMAN:  It is from my standpoint.
23        THE COURT:  Mr. Foley?
24        THE DEFENDANT:  Sir, last week I gave several changes to
25    my attorney, and I just received a copy of the ones with the
```

1  changes in it.

2       THE COURT:  All right.  Do you need additional time to

3  review that with your attorney before we proceed?

4       THE DEFENDANT:  May I, sir?

5       THE COURT:  Yes, sir.

6       THE DEFENDANT:  Thank you.  Take -- Mr. Carman, is 15

7  minutes sufficient?

8       MR. CARMAN:  I think that's more than sufficient, Judge.

9       THE COURT:  All right.  Take a brief recess to allow the

10  defendant to further review the presentence report in the case.

11       (A recess was taken from 9:03 a.m. to 9:12 a.m.)

12       THE COURT:  Thank you.  We will continue in Lexington

13  Criminal Action Number 20-25, United States versus Larry Dale

14  Foley Junior.  We have taken a brief recess to allow the

15  defendant to fully review the presentence report and discuss

16  with counsel some suggested changes.

17       Let me make sure that the defendant and counsel have had

18  an opportunity to do that; is that correct, Mr. Carman?

19       MR. CARMAN:  I think that's correct, Your Honor.  We -- I

20  think Mr. Foley just wishes for some of the -- some minor

21  biographical edits, changes to be included in the final version

22  which goes to the Bureau of Prisons.  And I've talked to

23  Officer Hammond and he indicates that's indeed possible, so....

24       THE COURT:  I'm sorry, that is what, indeed possible, was

25  that your comment?

1        MR. CARMAN:  Yes, sir, thank you.

2        THE COURT:  Are these matters that do require the Court's

3   attention in terms of guideline issues?

4        MR. CARMAN:  No, Your Honor.

5        THE COURT:  All right.  Then at the appropriate time, if

6   those matters would like to be called to my attention you may

7   certainly do so.

8        The Court again does understand that the defendant has

9   full opportunity to review the presentence report and discuss

10   the report with counsel.  Counsel has affirmed that fact.

11        Mr. Foley, do you affirm that fact as well?

12        THE DEFENDANT:  Yes, sir.

13        THE COURT:  Earlier there was an objection filed to the

14   presentence report.  I want to confirm whether the defendant

15   wishes to proceed on that objection, which is to paragraph 22.

16   That's a two-level enhancement under the guidelines section

17   2G2.1(b)(3) for knowingly engaging in child pornography.

18        MR. CARMAN:  Your Honor, we would withdraw that objection.

19        THE COURT:  That objection having been withdrawn, there

20   are no further objections that do require the Court's ruling,

21   so I will adopt the findings that are contained in the report,

22   as well as the guideline calculations.

23        Again, the parties may provide the Court with any

24   additional information about biographical or other information

25   that they deem to be relevant in this proceeding.

1          I will review the guideline calculations with the parties

2    in just a moment.  I do want to call a couple of matters to the

3    parties' attention, that I do expect them to address during the

4    course of this proceeding.

5          Of course, one would be an issue of restitution, both for

6    the victim as well as two special assessments, the statutory

7    special assessments, that will require the Court to determine

8    the defendant's indigency.  Also, if the parties believe that

9    additional time is needed for restitution, you are to advise me

10   of that fact as well.

11         Additionally, I do want the parties to address special

12   conditions of supervised release.  Those are listed in the

13   presentence report as possible conditions to be imposed.  And I

14   do want the parties to address the necessity of imposing those

15   particular restrictions on supervision.

16         And then, finally, I understand that there may be a

17   statement made by the identified victim's mother in the case;

18   is that correct, Mr. Marye?

19         MR. MARYE:  Your Honor, both the minor victim and her

20   mother have requested to address the Court --

21         THE COURT:  All right.

22         MR. MARYE:  -- before sentencing is imposed.  And the

23   minor victim has requested that her mother actually address the

24   Court first.

25         THE COURT:  All right.

1        MR. MARYE:  I wold also ask the Court's permission that

2   U.S. Attorney's Office Victim Specialist, Ms. Jenny Parker, be

3   permitted to accompany the minor victim up to the podium.

4        THE COURT:  Yes.  She will be allowed to accompany the

5   minor victim.

6        MR. MARYE:  Thank you, Your Honor.

7        THE COURT:  Now, typically I would -- if a victim does

8   wish to make a statement, after hearing from the defendant and

9   counsel, and then I give you a chance for allocution, I'll hear

10  from the victim at that time, but then give the defendant a

11  chance to respond if he wishes to do so.

12        MR. MARYE:  Very well.  Thank you.

13        THE COURT:  All right.  Thank you.

14        Now let me turn to the presentence report.  The offense

15  level calculations in the report for the guilty plea to Count 4

16  of the superceding indictment begin at page 6, paragraph 19, of

17  the presentence report.  And there are a number of special

18  offense characteristics that have been applied in the case.

19  The only objection to paragraph 22 has been withdrawn.

20        The base offense level in this matter is level 32 under

21  2G2.1(a).

22        There is a four-level increase under the guidelines

23  2G2.1(b)(1)(A) based upon the minor victim not having attained

24  the age of 12.

25        There's an additional two-level increase because the

1    offense involved sexual contact under 2G2.1(b)(2)(A).

2        There's also the two-level increase under 2G2.1(b)(3)

3    because the defendant knowingly engaged in the distribution.

4        In paragraph 23, there is a four-level increase under

5    2G2.1(b)(4) because the offense involved material that

6    portrayed sadistic or masochistic conduct.

7        And a two-level increase under 2G2.1(b)(5), because the

8    defendant was either a parent, relative, or legal guardian of

9    the minor involved in the offense.

10       It results in an adjusted offense level of 46.

11       However, as outlined in paragraph 29, there is an increase

12   under that guideline section 4B1.5(b)(1), a five-level increase

13   because if the offense of conviction is a covered sex crime,

14   and the career offender provision under section 4B1.5 apply,

15   and the defendant engaged in a pattern of activity involving

16   prohibited sexual conduct, then the defendant is a repeat and

17   dangerous sexual offender against minors and therefore the

18   five-level increase is applied.  That results in further

19   adjustment of offense level 51.

20       There is a three-level reduction shown for acceptance of

21   responsibility.  Before the Court may apply the third level of

22   acceptance credit, it does require a motion from the

23   government.

24       Mr. Marye.

25       MR. MARYE:  And the United States would so move.  Thank

1    you, Your Honor.

2         THE COURT:  That motion is sustained.  That would

3    ordinarily bring the offense level down to 48, but that is

4    higher than the highest offense level in the guideline

5    calculations, which is a 43.  Under the guidelines, the

6    guideline offense level total would then become level 43.  It

7    would be reduced from 48 down to 43.

8         Information regarding the defendant's criminal history is

9    contained in the presentence report.  While he does have

10   convictions involving traffic offenses, driving under the

11   influence offenses and speeding, there are no criminal history

12   points assessed for those offenses; and, therefore, he is

13   placed in criminal history category I for purposes of

14   calculating his guideline range.

15        Turning to the guideline calculations, paragraph 61

16   provides the statutory terms of incarceration.  And because the

17   defendant entered a plea to Count 4 of the superceding

18   indictment, that is a count that would call for a minimum term

19   of incarceration of 15 years and a maximum of 30 years.

20        In this case, the guideline range for a person with a

21   total offense level 43 and criminal history category I would be

22   a range of life imprisonment.  But because the statute is

23   limited to 30 years, the guideline range in the case would also

24   be limited to 30 years or 360 months.  And that does become the

25   guideline range in the case.

1          For supervision, the statute requires a minimum of five

2    years' supervised release, but that may extend up to life.   So

3    the guideline range for supervision in this case is five to

4    life.

5          The fine range in this matter, as set forth in

6    paragraph 72, is a range of 50,000 to $250,000.   I'll also call

7    the parties' attention to three special assessments.   There is

8    the $100 special assessment.

9          There's also two others under statutory provisions as set

10   forth in paragraph 70, there is a $5,000 special assessment

11   under Title 18, Section 2014.

12         And there's also an assessment that may be imposed as

13   reflected in paragraph 71 under the Amy, Vicky, and Andy Child

14   Pornography Victim Assistance Act of 2018, provides that the

15   Court shall assess no more than $17,000 on any person convicted

16   or under specific provisions, or not more than $35,000 on any

17   person convicted for trafficking in child pornography, or not

18   more than $50,000 on any person convicted of a child

19   pornography production offense.   So I do call those matters to

20   the parties' attention as I had indicated earlier.

21         There's also the issue of restitution in the case.   And in

22   viewing the government's sentencing memorandum, I believe the

23   government had indicated it may be seeking an extension of time

24   for further hearings on the issue of restitution.

25         Is that still to be --

1       MR. MARYE:  That is correct.

2       THE COURT:  -- the case?

3       MR. MARYE:  Yes, sir.

4       THE COURT:  And at the appropriate time the parties may

5  advise the Court as to any additional time that may be

6  necessary in order to determine appropriate restitution in the

7  case.

8       I'll also note for the record, I have just referenced the

9  United States' sentencing memorandum.  I have also received two

10 letters for consideration, one from the minor victim and also a

11 letter from the victim's mother.  And I have further received a

12 motion filed by the defendant for a downward departure from the

13 guideline range, a motion filed pursuant to 3553.  And it

14 appears at Record Entry Number 48.

15      I will take up the issue of the motion for a downward

16 departure during allocution in the case.  But again, those are

17 the guidelines that have been adopted by the Court.

18      Inasmuch as the defendant entered a plea to one count of a

19 superceding indictment, at this time is the government moving

20 to dismiss remaining charges contained in the superceding as

21 well as the underlying indictment?

22      MR. MARYE:  Yes, Your Honor.  Also the second superceding

23 indictment, which was issued, but he was -- we were in the

24 process of negotiating on that.

25      So I would ask the Court to dismiss the remaining counts

```
 1   of the superceding, the original indictment and the second
 2   superceding indictment.
 3       THE COURT:  All right.  That motion will be sustained
 4   effective upon entry of the judgment in the case.
 5       Other than the motion for variance, are there any other
 6   motions to be taken up in this matter at this time?  Any
 7   motions by the government.
 8       MR. MARYE:  None, Your Honor.
 9       THE COURT:  Mr. Carman, any other motions by the
10   defendant?
11       MR. CARMAN:  No, Your Honor.
12       THE COURT:  All right.  Thank you.
13       No further motions, we will proceed with allocution in the
14   case.  Mr. Carman, I'll hear from you first, and also if
15   Mr. Foley would like to make a statement to the Court, he may
16   do so as well.
17       MR. CARMAN:  Thank you, Your Honor.
18       If it please the Court, certainly the Court's been able to
19   review various matters in this case.  And without repeating too
20   much of what's been filed, we can, of course, note that this is
21   incredibly serious misconduct by Mr. Foley.
22       Aside from it, Larry's life has been one of service and
23   good employment.  As the Court can note that he had years of
24   meritorious military service.  Like some fraction of those who
25   do, he's encountered and suffered from PTSD from some of those
```

1    experiences.

2         More recently, he has been an educator.   And there is --

3    fortunately, there's nothing that I've seen, and I don't think

4    there's anything in the record that indicates that his

5    education of people was contaminated by his misconduct.   And so

6    I think thats' something noteworthy.

7         Judge, of course, we think about punishment, we think

8    about general deterrence, specific deterrence.   It's our belief

9    that what we've asked for would accomplish all of these things.

10   It is, of course, a very hefty term of punishment.

11        This seems like the type of offense -- because it's

12   incredibly serious, this seems like the type of offense that

13   the federal law gives -- gives certainly due consideration to

14   and the Sentencing Guidelines when it comes to punishment.

15   There's no disputing that this is something that the statutes

16   and the guidelines hold very seriously.

17        And we believe that what we've asked for, something no

18   greater than 280 months, accomplishes punishment.   That's well

19   over -- well over 20 years in the penitentiary.

20        Of course, as the government pointed out in his memo as

21   well, general deterrence is very important in cases like this.

22   We believe that what we've asked for accomplishes that.   And

23   also would specifically deter Larry from ever committing any

24   more misconduct if and when he is ever released.

25        There is a possibility that, frankly, when the Court

1    sentences him to something along the lines what we've asked for

2    or along the lines what the government asked for, either way

3    there is a possibility that -- because he would be a much older

4    man, there's a possibility that he would not -- a possibility

5    that he will not survive incarceration and live to see the

6    light of day, so to speak, so we believe that may be something

7    to consider, his age.

8         Larry suffered abuse as a child.  And we believe the

9    sentence we requested would be sufficient for the treatment and

10   rehabilitation in this regard that it seems as though he needs,

11   and certainly we keep the victim in mind when we talk about

12   Larry's needs, because obviously the people the government need

13   to protect in this case are the most important to consider.

14        The record indicates that Larry is sick, he is ill and he

15   needs help.  We think a sentence along the lines of what we

16   asked for would provide for that, that need.

17        There's been incredible suffering by the victim and her

18   family.  Certainly Larry's also lost everything.  He's lost his

19   freedom.  He's lost his family.  He's lost his employment.

20   He's lost some supporters probably, and he's lost his assets.

21   They are all tied up essentially in a divorce action in Madison

22   County.  He is effectively indigent.

23        I think our position, Judge, it's a little bit along the

24   lines of a fine analysis in 18 U.S. 3572, but I think our

25   position with a lot of the, shall we just call them money

1   issues, would be because a lot of the assets are subject to --

2   his assets would be subject to orders of the Court in Madison

3   Circuit Court, the other side of that litigation being the

4   victim's mother, who's the victim's guardian, it's our general

5   position that the more that Larry would have to pay to the

6   Court, the less that ultimately, implausibly, may be available

7   for the other side depending on how that litigation goes.

8        So that may be something for the Court to consider when

9   thinking about the various assessments and fines and so forth.

10       And I know that we may finally resolve restitution on

11  another day, that's heuristic, I suppose, to think about money

12  issues in the case.  So we believe that a sentence that we've

13  requested is sufficient but not greater than necessary to

14  accomplish all of the purposes of sentencing.  And that is our

15  humble request in this case.

16       And I might like to just confer with Mr. Foley briefly,

17  Your Honor, before, to see if he wants to address the Court.

18       THE COURT:  Yes, sir, certainly.

19       (Defendant conferring with counsel.)

20       Yes, sir.

21       MR. CARMAN:  I think at this time Larry would like to

22  remain silent, would not like to allocute.  Yesterday, we

23  received from the government various materials concerning --

24  you know, the letters that the Court has received, and some

25  information about the victim's CAC interview and so forth, so

1    that's just something that Larry's processing and I'm

2    processing.  And I don't think he wants to allocute at this

3    time and speak.  It may be something I can address -- if we

4    speak further, it may be something that I can address once the

5    victim talks.

6         THE COURT:  All right.  Yes, sir.  Just want to confirm on

7    the record that Mr. Foley does understand if he wishes to make

8    a statement to the Court, this is his opportunity to do so, but

9    he's not required to make a statement.

10        Do you understand that, Mr. Foley?

11        THE DEFENDANT:  Yes, sir.  I understand it.  I was fully

12   prepared to do so today.

13        THE COURT:  All right.  It's your determination.

14        THE DEFENDANT:  Yes, sir.  I've been advised to remain

15   silent.  And I just wanted it on the record to explain

16   something.

17        When I was presented with the plea agreement, Your Honor,

18   the plea agreement contained one thing.  And prior to coming to

19   the courtroom, I was handed a stack of papers that contains

20   significantly more.  And it's not that there's -- there's not

21   trying to skirt responsibility, Your Honor.  There is not

22   trying to make excuses.  There's not trying to -- it's none of

23   that.

24        It's just when you've prepared yourself for three months

25   for -- for something that you've been accused of, to speak on

1   behalf of, and then you receive 12 pages, and there are

2   significantly, significantly more things, I just -- I'm trying

3   to wrap my head around it now, Your Honor.  And I'm sorry, but

4   that's the truth, sir.

5      MR. CARMAN:  Judge, I have -- I have told Larry that he

6   may make statements at sentencing if he wishes to do so.  And

7   so we've talked about that.  Yes.

8      THE COURT:  All right.  Thank you.

9      Mr. Marye.

10      MR. MARYE:  Yes, Your Honor.  If I might make it clear on

11   the record, the additional information were redacted copies of

12   the statement from the minor victim, from the defendant's

13   estranged wife and the FBI 302 form from Special Agent Kidd

14   regarding the more recent forensic interview of the minor

15   victim.

16      So I believe those are the items that he is referring to.

17      THE COURT:  All right.  And in the event an individual is

18   identified as a victim, they may make a statement, an oral

19   statement, in open court for consideration.  It does not have

20   to be submitted in writing and provided to the defendant in

21   advance.

22      MR. MARYE:  Yes, sir, I believe so.  So but we --

23      THE COURT:  This information has been provided in advance.

24   But the victim could make a statement in open court here today

25   without having something in writing provided to the defendant

1    in advance.

2          MR. MARYE:  Absolutely.  That's correct.

3          THE COURT:  All right.

4          MR. MARYE:  Yes, sir.

5          THE COURT:  All right.  Thank you.

6          MR. MARYE:  For the restitution, we would ask the Court,

7    at the end of this hearing perhaps, to set a date specific.

8    The estranged wife of the defendant, the minor victim's mother,

9    has indicated to me she just received an email late yesterday

10   or last evening, I think even, from a counselor that is

11   helpful.  But we still don't have, I don't think, quite what we

12   could have at a future date.  So we would ask the Court to

13   schedule a date sometime in maybe about 70, 75 days, whatever

14   is convenient for the Court.

15         THE COURT:  All right.

16         Of course, one of the problems that the Court runs into

17   when we delay restitution and the Court addresses special

18   assessments, the Court typically would want restitution to be

19   paid first.  But it may not be paid first if the Court makes a

20   special assessment on -- I have to make a finding as to whether

21   the defendant is indigent first under the statute that's been

22   referenced earlier, there are two actually.

23         MR. MARYE:  Yes, sir.

24         THE COURT:  And so there's an indigency issue and then

25   there is a special assessment issue, and then there is

1    restitution that may have to be determined later that could

2    impact the special assessment that's determined today.

3         MR. MARYE:  I understand, Your Honor.  And that I think

4    part of the reason, particularly in this case, is because of

5    the fairly recent what we call disclosure by the minor victim,

6    as I think the Court is well aware, many times in these kinds

7    of cases -- well, any victim, but in particular it seems minor

8    victims will oftentimes really struggle with coming to terms

9    with what has happened to them.  And we don't always know early

10   on in the process the full extent.

11        THE COURT:  Yes, sir, I fully understand that.

12        MR. MARYE:  If I may then, Judge, under the 3553(a)

13   factors?

14        THE COURT:  Yes, sir.

15        MR. MARYE:  The nature and circumstances of this offense,

16   and the history and characteristics of the defendant.  As I

17   think even the defense counsel acknowledged in their sentencing

18   memo, I mean, this is certainly among the most serious of

19   offenses that we can have.

20        THE COURT:  Are there any that are worse?

21        MR. MARYE:  Yes, sir.

22        THE COURT:  Are there any that are worse, any federal

23   offenses?

24        MR. MARYE:  I would suppose only a homicide, perhaps, in

25   the course of committing such an act, yes, sir, or certainly

1    would be on par as far as I'm concerned.  But other than that,

2    no, sir, I can hardly think of anything that would be really

3    any worse.

4         Oftentimes, it seems the history and characteristics of

5    the defendant, they look at, well, there is no criminal

6    history.  And that may well be true, at least none that got him

7    any criminal history points, traffic violations, but I think

8    you can also look at his history in terms of this type of

9    offense, that it went on for an extended period of time.  It is

10   not a single event that happened on a discrete date one time.

11   This happened continually, as far as the actual sexual abuse of

12   the minor victim, and more than one image or images were taken

13   on more than one occasion.

14        Obviously, the need to reflect the seriousness of the

15   offense goes without saying.

16        To promote respect for the law, to provide just punishment

17   for the offense, I think certainly requires a very significant

18   sentence.  And again, Mr. Carman has acknowledged that in his

19   sentencing memorandum.

20        To afford adequate deterrence to criminal conduct, I think

21   a sentence -- I'm asking the Court, I think I made it clear,

22   asking the Court to impose the sentence of 360 months, of

23   30 years.

24        The guidelines are to be considered, the kinds of

25   sentences available.  And in this case, the guidelines are

1    life.  Now, they are not binding.  The Court, of course, if it

2    had multiple counts, could impose life, but you could go

3    downward, obviously, to whatever sentence you believe is

4    sufficient but not greater than necessary to establish all the

5    elements of 3553(a).

6        I think the Court is probably well aware that my standard

7    offer in these type of cases has been a single count to the

8    most serious offense.  And I must confess that I'm starting to

9    sort of wrestle with that idea.  Maybe I should require a

10   defendant to plead to multiple counts.  In essence he's

11   guaranteed a sentence of no more than 30 years by the plea to

12   this count, as opposed to if he had gone to trial and been

13   convicted of multiple counts, and then of course he could have

14   gotten a life sentence.

15       And then to address the factors that you requested us to

16   address, Your Honor.  The two mandatory special assessments,

17   obviously the $100, he has to have that.  There's nothing else

18   really to say about that, that is absolutely required.

19       The second one, the 5,000, under Title 18, Section 3014,

20   is for you to make the determination if he is non-indigent,

21   then again, that is mandatory.  And is certainly complicated

22   here by the fact that he is in the midst of a divorce and that

23   he has, you know, no control of any of his assets, I guess,

24   right now while he's incarcerated.

25       The United States would probably normally push very hard

1   for that assessment to be imposed, but for the fact, as you

2   pointed out, Judge, the potential request or the request for

3   restitution, for which we don't really have a final figure.

4   And as you indicated, certainly it would be the United States'

5   preference that restitution be paid to effect any reimbursement

6   for any counseling costs, including future counseling costs of

7   the minor victim.

8        Then as for the third mandatory special assessment under

9   the Amy, Vicky, Andy Child Pornography Victim Assistance Act, I

10  have one concern.  And that is that the count to which

11  Mr. Foley pleaded guilty, I believe covers the time frame from,

12  I believe it was March of 2018 until sometime late in 2019.  I

13  don't believe that act was in effect until the end of 2018.  So

14  I don't know if that then would perhaps cause a problem as far

15  as that being imposed on him.

16       The United States would ask the Court primarily to -- as I

17  said, we are concerned about restitution to the minor victim,

18  as far as any future counseling costs, which could end up being

19  quite substantial, depending upon what the counselor would be

20  able to provide us.

21       Finally, the Court asked us to address the conditions of

22  supervised release.  I believe those that are listed in

23  paragraph 66 of the PSR are pretty much the standard conditions

24  that this Court -- I guess all the judges here in the Eastern

25  District do typically impose.

1          THE COURT:  They are in cases.  But the Sixth Circuit has

2     indicated, actually in some cases you've cited, that when

3     special conditions are imposed, even if this district would

4     ordinarily impose those, if special conditions are imposed,

5     there needs to be a reason given for the conditions, each and

6     every one.

7          MR. MARYE:  Yes, sir.

8          THE COURT:  And they certainly may be appropriate in this

9     case.  And I have considered all of those in this case, but I

10    want the parties to have the opportunity to address those.  And

11    if anyone believes that one is not appropriate, then I can

12    certainly provide more explanation if I disagree.

13         MR. MARYE:  Yes, sir.  I believe that each of those that

14    are listed here are correctly put forth.  They are required or

15    would be necessary in this case.

16         Do you want me to address each one of them --

17         THE COURT:  No.

18         MR. MARYE:  -- with the reasons, Judge?

19         THE COURT:  No, only if you believe that there is a

20    specific condition that should not be imposed or should not be

21    considered.  Or if the defendant feels that there isn't, then

22    I'll allow you to respond to that.

23         MR. MARYE:  Yes, sir.

24         THE COURT:  Your position is that these are all

25    appropriate under the facts of this particular case and should

1    be imposed?

2         MR. MARYE:  Absolutely, yes, sir.  Thank you, Judge.

3         THE COURT:  Also, Mr. Marye, at this time would you like

4    to present the two individuals that would like to make a

5    statement?

6         MR. MARYE:  Yes, Your Honor.  I would ask Sarah Foley

7    to --

8         MR. CARMAN:  Your Honor, if I might --

9         THE COURT:  Yes, Mr. Carman.

10        MR. CARMAN:  -- please?  Briefly, Your Honor, I think what

11   we would like to do before we proceed, I know that the

12   government intends call these witnesses under the Crime Victims

13   Statute.

14        THE COURT:  Yes, sir.

15        MR. CARMAN:  I think -- and I've talked with Mr. Foley

16   about this, about how the government intended to call these

17   witnesses, and I think -- I don't expect the Court to

18   necessarily agree with this, but I might lodge an objection to

19   the victim's mother testifying under 18 U.S.C. 3771(e)(2)(B).

20   It seems to me that, just reading the statute, you know, the

21   parent may assume the crime victim's rights under this chapter.

22        Just a reading of the statute seems to indicate that if

23   the victim themself is testifying, then that might not --

24        THE COURT:  Even if that's true, Mr. Carman, your position

25   is true, that if the minor victim makes a statement, your

1    position is that the mother then couldn't step in on her behalf

2    and make a statement, that even if that's true, the Court may

3    still accept any evidence that the parties wish to present if

4    it's relevant and appropriate at a sentencing hearing, even

5    outside the act itself.

6        So if the government wished to present any testimony as to

7    the seriousness of these offenses or other information, then it

8    has the opportunity to do that.  So your objection would be

9    overruled.

10       MR. CARMAN:  Very well, Your Honor.  Thank you.

11       THE COURT:  Mr. Marye.

12       MR. MARYE:  Thank you, Your Honor.  We would ask that

13   Sarah Foley be permitted to come to the podium.

14       THE COURT:  Yes.

15       MS. FOLEY:  Sir, I'm going to read the letter that I

16   submitted to you because I would like everyone to hear it.  And

17   then I have a few additional comments I would like to make, if

18   that's okay.

19       THE COURT:  Yes, ma'am.

20       THE WITNESS:  It took me a long time to write the letter

21   because there are truly no words to even begin to demonstrate

22   the deep impact the crimes of Larry Foley Junior have had on

23   our family, especially our daughter, A.F.  She was groomed by

24   him and stripped of her innocence at under the age of 12 years

25   old without even realizing what was happening to her.

1      He warped her mind and programmed her to view his horrible

2  actions as normal.  She's only now beginning to see that there

3  was nothing normal about the things he was doing to her.

4      I've been with her and seen her struggle with her feelings

5  as the year has gone by.  She's cycled through several various

6  emotions and stages.

7      She suffered immense feelings of loss.  First and

8  foremost, loss of her innocence.  And she's not yet old enough

9  to even realize the full implications of that.  Loss of her

10  father.  Loss of a normal family unit.  Loss of a sense of

11  security, and loss of the life she once knew.

12      While at first she was afraid to admit she had memories of

13  the abuse, she's is finally able to speak of it and is no

14  longer suffering silently.  She stated it had been going on for

15  a while.

16      So many things about their relationship make sense now

17  that I know what was going on.  While he took care of her in

18  regard to things, he never truly showed empathy and was always

19  demanding and condescending towards her.  It was like he was

20  trying to buy her love.

21      Nothing she ever did was good enough, from grades to

22  scores in her gymnastics meets to not being pretty enough.  He

23  always had the upper hand and made sure she would never argue

24  with him or stand up to him.  I see now why he was the way he

25  was with her, as he threatened her that she would lose me, her

1   mother, if she ever told their secret.

2       She confided in me that he had told her that it was normal

3   for fathers and daughters to have sex, but that mom and others

4   would never understand.  He was her father, so of course she

5   listened to what he had to say and believed him.

6       His actions cannot only be described as pure evil.  I

7   cannot comprehend how someone, who is supposed to take care of

8   her, teach her about life and protect her, is the very person

9   who caused her the most harm.

10      He completely tore our family apart and has caused a

11  feeling of emotional bondage even in his absence.  Our lives

12  will never be the same.

13      It's quickly approaching a year since he was arrested.  To

14  say it's been very difficult is an understatement.  The hardest

15  thing I've ever had to do is try to take care of my beautiful

16  daughter and help her heal.  She was being taken advantage of,

17  lost her innocence, and the most evil, being raped by her

18  father.

19      Larry Foley Junior has shown a total lack of regard for

20  A.F.'s well-being.  Not only are we here today for the evil,

21  secret life he was living, but we are also in the process of

22  divorce.  He continues to demonstrate the highest form of

23  narcissism in all of his actions and has only been concerned

24  with his own well-being.  More concerned about who would get

25  the guns and bourbon rather than making sure his daughter was

1   coping with the pain and heartache that was inflicted by him.

2       I attended his guilty plea hearing here in this courtroom

3   and came prepared to hear him admit details of the beyond evil,

4   unimaginable acts he had committed.  However, he did no such

5   thing.  And while to hear the horrible truth may break every

6   bit of what's left of my heart, closure is needed.

7       I would like to hear him admit to the Court today exactly

8   what he did before us and before God.  I truly believe he feels

9   no remorse based on his actions.

10      With 23 years of marriage to this man, I can attest that

11  he always thought he was smarter than everyone and could always

12  get away with anything his heart desired.  I would almost

13  consider it a God complex.

14      I'm so grateful to all of those involved in bringing to

15  light his dark behavior and rescuing our daughter and myself

16  from his evil intent.  We would have not felt safe had he not

17  been detained since the day of his arrest.

18      There are consequences for our actions.  And I pray the

19  appropriate decision is made at the sentencing that will help

20  both my daughter and myself feel safe from him for as long as

21  the guidelines allow.  I fear that once he is released, he will

22  try to pick up where he left off with our daughter, as well as

23  attempt revenge on me for not sticking by him.

24      My only goal is to be removed as far from him as possible

25  and take care of our daughter and help her to heal.  It's going

1    to be a long road for her.  While I did not know what was

2    happening to her prior to his arrest, I'm here today to fight

3    for my daughter and I will never stop.

4        I ask you to consider the acts that this evil man did

5    before us to his own child, his own flesh and blood, and rule

6    with a strict hand.

7        I'm not writing any of this in a vengeful manner but only

8    want what is right.  Romans 12:19 says, "Do not take revenge,

9    my dear friends, but leave room for God's wrath, for it is

10   written: 'It is mine to avenge, I will repay.'"

11       I have faith in God and the justice system that Larry

12   Foley Junior will pay justly for his actions.  So his crimes

13   have forever changed the trajectory of our lives.

14       That was the end of my letter.  So these are just a few

15   additional notes that I've made since that time.

16       I was married for 23 years to a man I did not know.

17   Although he was verbally abusive and controlling, I would have

18   never imagined he was capable of the things he has done that

19   bring us all here today.

20       The magnitude of his actions brought to light over the

21   past year have overshadowed any good memories of him that I

22   had.  I will not let this time in our lives define who we are,

23   but will do everything within my power to learn and grow from

24   it.

25       I am in disbelief that I was married to a man for so long

1    who is capable of raping our daughter, his own flesh and blood.

2        Although there were red flags, I always passed them off as

3    him being odd.  I had no idea what lurked beneath the surface.

4    I would admit I was sensing something not right, even maybe

5    evil within his heart, over the past year prior to his arrest,

6    but that prompted me to simply pray for his soul.  I still do.

7    And I hope that he will make things right between him and God

8    before his appointed time to leave the Earth.

9        Imagine for a moment your worst enemy living right in your

10   own home, knowing the intimate details of your life and your

11   daughter's, knowing exactly when you would be gone and when you

12   would be home so he could prey on your daughter.  I never in a

13   million years would have believed I had to protect her from her

14   own father.

15       I try to put myself in my daughter's shoes.  To have one

16   of the people I trusted the most, my father, lie to me, take

17   away my innocence, and abuse me over and over, all the while

18   making me think it was normal.  Can you imagine that this young

19   child was also able to stand up to her father and ask him to

20   stop what he was doing because he's her father, not his

21   girlfriend.  This was her plea with him to stop the abuse.

22       I can't in my worst nightmare imagine what she's been

23   through, and I can't give that back to her no matter how hard I

24   try.

25       I wonder if he realizes the implications on her future and

1   the ability to have sexual interactions with her true love as

2   an adult.

3       A.F. has been fearful of speaking, fear that she would get

4   in trouble or something would be done to her and she would lose

5   me.  That fear was instilled in her because he made sure to

6   program to believe these things.

7       She admitted to me that it was an ongoing occurrence and

8   started when she was maybe seven or so, but she can't remember

9   for sure.  She has told me minimal details and it has been very

10  difficult for her to talk about.

11      While I'm not the actual victim of these crimes committed,

12  I am a victim of the repercussions of his actions, and also a

13  victim of his verbal abuse and controlling, narcissistic

14  behavior for 23 years, behavior that preceded the crimes that

15  we hear about today.

16      I am now left to be a single mom of a child who has been

17  abused in the most evil way possible, and to try to pick up the

18  pieces of our broken family, and help her come to terms with

19  everything and help her heal.

20      I too need healing to be able to be strong for her.  We

21  need to put this chapter of our lives behind us and move on to

22  our new life that does not include him.  I will do everything

23  in my power to protect my daughter and to protect our family.

24      In addition, being a single parent, I'm no longer able to

25  work the long hours I did before, as I'm her sole caregiver and

1  have to put her first.  So we're suffering loss of income

2  beyond losing that from his extra job that he lost when he was

3  arrested.

4      I've learned a hard lesson of life and who to trust.  I've

5  learned that even close family cannot always be trusted.  I

6  used to think that was a given.  I cannot even trust my own

7  husband.  I have learned to be super cautious to who I allow my

8  daughter to be around.

9      Before the events on January 6th, there are several times

10 when he would be yelling at me or A.F. and would say things

11 like, "I can't stand you all anymore, I'm going to leave."  And

12 our daughter would plead with me to leave him and let it just

13 be the two of us.  Without knowing the evil that was being done

14 to her, I could see her reasoning just because of the way he

15 spoke with us, never even fathomed that she had a much deeper

16 reason to make that plea.  How I wish she had spoken up sooner.

17     We were both abused by Larry, only in different ways.  He

18 took something from her that can never be recovered, her

19 innocence.  I've always been careful of the types of things she

20 watched on television, because once you see something, you

21 cannot unsee it.

22     She will never be able to unsee the things he did to her.

23 Sure, she can tuck it away and choose not to ruminate on them,

24 but they are a part of her life story and nothing I can do can

25 ever change that.

1        As a mother, I'm dealing with a girl who is about to

2   become a teenager, which is already a very difficult age, on

3   top of the things she has to endure, from a very invasive

4   medical examination to make sure she did not have physical harm

5   from his crimes, to being questioned with very uncomfortable

6   material for her age.  She's also going to require ongoing

7   counseling for many years to come.

8        I was lied to and cheated on.  I found evidence of an

9   affair that was occurring just prior to his arrest.  And not

10  only that, but he cheated with our own daughter.  That is just

11  beyond a level of sick that I cannot even comprehend.  I found

12  out months after his arrest that he had been saying

13  inappropriate things to our daughter about the other woman in

14  question.

15       Larry Foley Junior stole our daughter's innocence.  He

16  stole our sense of security, and he forever changed our lives

17  in the most unimaginable ways.  He broke and shattered our

18  trust, bringing a mother's worst nightmares to life.

19       While he is not here for a murder charge, he most

20  certainly murdered the life our daughter and I once knew.  I

21  pray he is able to look our daughter in the eye today and

22  genuinely tell her how truly sorry he is for the unimaginable

23  harm he has caused her that will remain throughout her life.

24       I pray that he has regret and is truly sorry for his

25  actions.  The life we once knew is gone and she will have to

1   struggle with feelings about her dad, her flesh and blood, in

2   realizing the gravity of what he's done.

3       I'm a woman of faith and I believe in forgiveness, and I

4   know that God commands me to forgive, and I am working really

5   hard on that.  I would be lying if I say I'm there today, I am

6   not yet, but I am working on that.  And I plan to be there.

7       And I'm not going to let this define us and I'm not going

8   to let it ruin the rest of our lives.  I will forgive him.  I

9   will not harbor bitterness and I will move on the best way we

10   can.

11       In considering all of the facts presented in this case and

12   determining an appropriate sentence, I urge you to consider the

13   safety and well-being of my daughter and myself.  What he did

14   was the purest form of evil imaginable and we will not feel

15   safe once he is released.  Thank you.

16       THE COURT:  All right.  Thank you.

17       Mr. Marye, if the victim's advocate would like to come up

18   with the minor victim, she can come up at this time.

19       Yes, ma'am.  Now, I've read your letter, I've had the

20   opportunity to read your letter.  If you would like to make a

21   further statement, you can at this time.

22       A.F.:  The last words that I remember my dad telling me

23   were, we were at a gymnastics meet and he told me that I sucked

24   and that I would never be good at anything.

25       Ever since he left, I've always just remembered that.  And

1  I can never get over the fact that he verbally abused me and my

2  mom both.

3      Ever since he left, I haven't been able to trust anyone,

4  because the one person I trusted the most hurt us and even he

5  left.

6      And before, whenever he was allowed to write us letters,

7  he wrote one me telling me about how he got COVID.  And he

8  didn't have any remorse whatever.  And he was so self-centered

9  and revolved around himself and didn't care about anything that

10 he did.

11     And at first, whenever he pleaded not guilty, it made me

12 very angry because he didn't care about how it made us feel.

13 He didn't care about him leaving.  He cared about himself and

14 what was best for him.

15     And I still can't even wrap my head around all of this.

16 And it's been very hard for me to talk about because I can --

17 all I can think about is how he left us and how he betrayed our

18 trust and how he left everyone.

19     Thank you.

20     THE COURT:  All right.  Yes, ma'am.

21     Mr. Marye, any additional information you would like to

22 provide to the Court at this time?

23     MR. MARYE:  No, thank you, Your Honor.

24     THE COURT:  Thank you.

25     Mr. Carman, if you would like to respond, you may do so.

1          MR. CARMAN:  May I have just one moment, please?

2          THE COURT:  I am sorry?

3          MR. CARMAN:  May I have one moment to talk to Mr. Foley,

4     please, Your Honor?

5          THE COURT:  Yes, sir, you may.

6          MR. CARMAN:  Nothing, Your Honor.  Thank you.

7          THE COURT:  All right.  Thank you.

8          At this time, it's the Court's responsibility to impose a

9     sentence in this case.  The defendant entered a guilty plea in

10    this matter voluntarily to one count of a superceding

11    indictment that has a mandatory minimum term of incarceration

12    of 15 years.

13         The statute has a maximum term of 30 years that may be

14    imposed.  The Court may not impose a sentence beyond a 30-year

15    term of incarceration.

16         The prosecutors and courts have a lot of discretion in

17    ultimately determining sentences in cases such as this.

18    Prosecutors have discretion because they can determine the

19    charges that are made against an individual.  And ultimately in

20    plea negotiations, they can determine maximum penalties by

21    agreeing to allow the defendant to enter a plea, for example in

22    this case, to one count that does have a statutory maximum.

23         While one attorney, prosecutor in one district may follow

24    the procedures, as Mr. Marye's indicated a normal practice of

25    allowing someone to enter a plea to one count having the more

1    serious charge.  That's certainly not uniform and it's not

2    always done in this district, and of course many times plea

3    negotiations do depend on the type of evidence and the weight

4    of evidence, so there are reasons for the negotiations the

5    parties enter into.

6        But the reason I point that out is because it does explain

7    in part the various sentences that are imposed for similar

8    offenses or similar conduct.  It goes to one of the factors of

9    sentencing under Title 18, Section 3553(a)(6), and that is the

10   need for the Court to avoid discrepancies or disparities in

11   sentences.  The Court should avoid unwarranted sentencing

12   disparities among defendants with similar records who have been

13   found guilty of similar conduct.

14       Now, in these type of cases, many times there are

15   variances.  And when we look at national statistics published

16   by the Sentencing Commission, we do see that this is one of the

17   areas where there is the greatest amount of variances.  That's

18   due, in part, to a particular Court's determinations as to

19   seriousness, and that's in part subjective, but it's also due

20   in part to decisions that are made at the charging level and

21   then in terms of pleas that are negotiated.

22       And so I do certainly acknowledge that with these type of

23   offenses, that there are substantial variances below the

24   guideline range.

25       Many courts have disagreements about some of the

1   enhancements that are applied, and many judges feel that these

2   offenses perhaps are not as serious as other judges believe

3   that they are.   That's especially true when we don't have a

4   hands-on offender, when we have a person that either

5   distributes or possesses child pornography, the arguments are

6   always made that it's a victimless crime -- they are often made

7   it's a victimless crime.

8       But this case really puts in sharp focus that these

9   offenses are not victimless, there are victims, and they are

10  hurt greatly by the actions of individuals such as this

11  defendant.

12      But there are victims in those other cases as well, and I

13  think everyone should certainly be aware of that, and the

14  victimization creates quite a bit of harm, long-lasting harm.

15  It's also true that individuals that commit these heinous

16  offenses are often abused themselves as children.

17      So it is true that it is difficult many times to overcome

18  abuses as a child, but I'm certainly hopeful that the victim in

19  this particular case is able to do that with some counseling

20  and some proper treatment going forward.

21      A young, beautiful girl that was abused in this matter.

22  Very smart, obviously.   And hopefully very resilient, but time

23  will tell.   But I am very hopeful that she will overcome these

24  abuses by someone that she trusted, as she should trust, you

25  should be able to trust a parent.

1          But in determining an appropriate sentence, the courts

2     begin with the guideline calculations.  That is an appropriate

3     starting point.  The Sixth Circuit has recognized that is a

4     starting point, but it's not the place where the Court must end

5     because the guidelines are not binding on courts.

6          Now, there is a mandatory minimum term in this particular

7     case and that does prevent the court from going below the

8     15-year term of incarceration.  The Court can't go above the

9     30-year term, but the Court does have discretion within that

10    range.

11         The guideline range in the case is not life.  The

12    guideline range is 360 months, because under the guidelines,

13    specific provisions of the guidelines, the guidelines can't be

14    higher than the statutory maximum for a single count of

15    conviction.

16         Had the defendant entered a plea to more than one count,

17    then the Court could stack those counts to reach a higher

18    guideline range, but that did not happen in this particular

19    case, and so the guideline range is 360 months.

20         The Court also considers the range for supervised release.

21    And in this case, the range is five years to life for the

22    reasons that I'll explain more fully in just a moment.  I

23    consider those both as starting points, but I consider the

24    factors of 3553 in making the ultimate decision in this case in

25    terms of the penalty to be imposed, as well as a term of

1    supervision and conditions of supervision.

2         And then also, of course, I consider one matter that's not

3    been addressed here today, and that is the possibility of a

4    fine under 5E1.2(d), and those eight factors that are listed in

5    that particular section.

6         Let me go through the statutory factors first, and then

7    I'll explain my analysis in a little more detail in the context

8    of the arguments that have been made here.

9         The Court does consider the nature and the circumstances

10   of the offense, as well as the history and the characteristics

11   of the defendant.

12        Again, the Court does have a bit of discretion in

13   determining the seriousness of the offense as it relates to

14   those circumstances.  And that also explains, I think in part,

15   why perhaps some sentencing judges may impose different

16   sentences because they view these matters differently in terms

17   of the seriousness.

18        For example, you may find a judge in the Northern District

19   of Ohio, for example, that does not find child pornography to

20   be particularly disturbing and may impose a time-served

21   sentence and be reversed by the Sixth Circuit, and impose a

22   time-served sentence again and be reversed by the Sixth

23   Circuit, and then have the case taken away the third time.

24        You may find other judges that find these cases to be

25   moderately serious, but not overly serious.  That's the reason

1  I asked the question earlier about, is there a crime that's

2  more serious.  Perhaps homicide, but at least that has some

3  finality to it.

4       This is a crime that has continuing consequences, and I

5  consider it to be one of the more serious crimes that can be

6  committed.  That's my view.  Crime against a child or crime

7  against an old person that can't defend themselves.

8       It is necessary that the Court consider seriousness and

9  also provide a just punishment.  The purpose of sentencing is

10  not punishment in punishment's sake, but it has many purposes.

11  It has punishment as one purpose, but it has deterrence, it has

12  protecting the public, and it has rehabilitation as other

13  factors that are taken into account.

14       Deterrence is an important factor.  And in a case such as

15  this, it is important for two reasons.  The first is to provide

16  specific deterrence to this defendant.  And if I am able to

17  provide deterrence to this defendant, then I'm also able to

18  provide a measure of protection to the public.

19       But there's also general deterrence.  And that is

20  deterrence that hopefully would prevent other individuals

21  similarly situated from engaging in this type of conduct.

22       This is an individual that is well-educated.  He does have

23  some military training and experience, and the Court does

24  consider whether a person needs additional training, vocational

25  training, education, or types of rehabilitative treatment.

1        In this case, I don't believe it's necessary, in terms of

2  vocational or educational training, but I do believe that the

3  defendant could benefit from treatment for mental health and

4  sexual disorders for obvious reasons in this case, and that

5  will be a recommendation that I will include in the sentence,

6  in terms of rehabilitation for this defendant.  I am certainly

7  hopeful that he will benefit from that type of treatment.

8        But at the same time, I'm cautious and I'm cautious about

9  the need to provide a sentence that will protect not only his

10  daughter, but others that he may come in contact with in the

11  future.

12        There's been references here and in the letters that have

13  been submitted to the Court about the defendant, while

14  admitting his guilt, not really showing any remorse.  That's my

15  impression of the defendant as well, that he tends not to be

16  remorseful but he's looking to blame others, looking to make

17  excuses.

18        And I suspect, based upon his conduct here today, that

19  this is the type of defendant that will be filing a 2255 motion

20  when he has the opportunity to do so, because while he's

21  admitted his guilt, when faced with the consequences of his

22  actions, he will attempt to convince himself perhaps that he's

23  not the bad guy, that maybe he is the victim in the case.

24        Then there's also the issue of unwarranted sentencing

25  disparities that I've talked about at some length, and the need

1   to provide restitution.

2       Addressing that issue of restitution first, there are two

3   statutory provisions.  One that may apply in the case, but

4   based upon the date of enactment, it does overlap the period of

5   violations committed by the defendant, and out of an abundance

6   of caution, I will not be imposing that particular special

7   assessment for legal reasons.

8       As to the second assessment, which would also provide for

9   significant special assessment in this case, the Court is to

10  consider the defendant's financial status.  In doing so, I have

11  reviewed the financial information contained in the presentence

12  report.

13      I understand that there are divorce proceedings and that

14  the defendant may lose some or any assets that are listed.  He

15  will be spending a lengthy period of time in custody for his

16  admitted criminal conduct.  And while he may be able to pay a

17  portion of a special assessment if he's working while he's

18  incarcerated, I am more concerned with the victim in the case

19  being able to receive whatever restitution can be paid with

20  whatever resources that he may have available to him.

21      So for those reasons, the Court concludes that his

22  indigency would prevent imposition of that additional special

23  assessment in this matter.  Again, not because it's not

24  appropriate, but because of his current status and my concern

25  with his ability to pay restitution in the case.

1          Turning next to the special conditions of supervision that

2     will be imposed in this matter.   These are conditions that are

3     outlined in the presentence report.   And it is true that many

4     of these conditions are often imposed in cases involving sex

5     offenders, whether they be individuals convicted for

6     distribution offenses, possession of child pornography or

7     related matters.   And the Sixth Circuit has indicated that the

8     Court should look at each one of these and make findings that

9     they are appropriate.   If they're not appropriate, they should

10    not be imposed as special conditions.

11         And I have done that in this case, and I do believe each

12    and every one of these conditions, they are necessary to

13    provide protection not only for the victim in the case, but

14    also to provide protection for other individuals when the

15    defendant is released, if he is released.

16         And the argument has been made that he may not live long

17    enough to serve the period of incarceration that would be

18    imposed, whether it's the term that the government seeks of

19    360 months, or the term that the defendant is requesting, which

20    is 280 months.   And maybe he will not.   And if he doesn't, then

21    these restrictions won't go in place and he will not be in

22    danger of harming other individuals.   But if he is released

23    from incarceration at some point in the future, they are

24    necessary.

25         They are necessary based upon his current attitude and

1    conduct, but they are also necessary to provide protection

2    against individuals that do commit these offenses, because

3    offenders are not limited by age.  Most offenders that the

4    Court sees for these convictions are older, male, in their 50s

5    or later, without any criminal history that's reported.  These

6    are crimes that are hard to detect.  And these restrictions

7    will enable the probation office to monitor the defendant and

8    provide protection to the public going forward, so I do find

9    that they are all necessary.  And I'll go through these with

10   the parties in just a moment.

11        Now, turning to the arguments that have been made, some of

12   the arguments have been made in the context of the factors of

13   3553.  Counsel for the defendant does acknowledge the

14   seriousness of this offense.  This is a very serious offense,

15   and I've already expressed my opinion about how serious I

16   believe that it is.

17        He's talked about the defendant's life of service in the

18   military and as an educator.  That does not merit any reduction

19   in this particular case from a guideline range of 360 months.

20   Certainly, military service is meritorious.  Being an educator

21   is an honored profession, but being an educator in and of

22   itself is not something that would merit a reduction.

23        This is a defendant that was teaching, at least part time,

24   children of the age of the victim in the case or near that age,

25   third graders to fifth graders.  And I am sure a lot of

1   parents, this is their worst nightmare, to know that Mr. Foley

2   was in contact with their minor children based upon his

3   proclivities.

4       There's no indication, however, that he harmed any of the

5   other children, none has been presented to the Court.

6       But this is not the type of person that we need as an

7   educator, someone that's a pedophile that's willing to harm

8   small children, young children, minor children.

9       Counsel talks about punishment being both general as well

10  as specific, and I have already addressed that matter.  And I

11  believe a sentence within the guideline range is needed.  The

12  360-month term, which is the maximum term, is needed not only

13  for specific deterrence for this defendant, but also to send a

14  clear message to other individuals that this type of conduct

15  will not be tolerated.

16      So I will certainly overrule the motion for a variance,

17  it's not supported by the facts in this case.  And it would

18  unduly diminish the seriousness of this particular offense to

19  which the defendant has entered a plea.

20      280 months is not acceptable, it's not appropriate.

21      Again, the defendant has made reference or counsel has

22  made reference to the defendant's suffering abuse as a child.

23  That does not give an individual a free hand to abuse others.

24  That may be a reason, and there is an indication that

25  individuals that are abused as a child do abuse others as they

1    are grown, but that's certainly no excuse for this type of

2    conduct.

3         Counsel referred to the defendant being sick, ill.  His

4    wife or ex-wife has referred to him as being evil.  I think

5    they are talking about the same type of behavior, and hopefully

6    with some treatment he can recover from that malady, regardless

7    of how it's described.

8         Counsel also refers to loss of family and perhaps loss of

9    supporters.  And I can only say I would hope so.  I would hope

10   that if a person is a supporter of the defendant, that based

11   upon his conduct, that perhaps they are not as much of a

12   supporter of him today as they were months ago.

13        Turning to the arguments of the United States.  The Court

14   first will establish a date at the conclusion of this

15   proceeding for further proceedings to determine restitution in

16   the case.  Of course, this is not a divorce proceeding.  I do

17   understand that the defendant's wife, or ex-wife as I've

18   referenced, may have suffered greatly as a result of the

19   defendant's conduct, but the restitution issue will concern the

20   harm that's occurred to his daughter.  And that will be the

21   focus of the proceeding.

22        Although she has spoken eloquently today about how the

23   defendant's conduct has affected her, but also her daughter

24   based upon her observations, and that is certainly appropriate

25   consideration for the Court, in considering the victim under

1    the Victim Restitution Act.

2        Mr. Marye also talked about the nature and circumstances

3    of the offense, the very seriousness of the offense, the fact

4    that the defendant does not have criminal history, or at least

5    criminal history points, and that's not an unusual factor.  I

6    want to go back to some of the points that were raised in the

7    sentencing memorandum filed by the United States, and it

8    dovetails on the comments I was making earlier about the

9    seriousness of the offense and how these offenses are viewed by

10   different individuals.

11       There's a line of authority from the Sixth Circuit that

12   does indicate that when the Court considers unwarranted

13   sentencing disparities, that that is nationwide sentencing

14   disparities and it's not necessarily either within the circuit

15   or within a particular district, or even within a particular

16   case, that's not prohibited.  The Court may consider those

17   matters.

18       But comparing cases is really like comparing apples and

19   oranges, unless the Court has the various detailed information

20   about a particular case, it is difficult to determine, and

21   about whether they are comparable.  And then it's also subject

22   to how one judge would view the seriousness of an offense.

23       It's best described by a case from the Sixth Circuit, I'll

24   provide the parties with a citation to it.  *United States*

25   *versus Thomas*, it's 395 Fed.Appx. 168, it's a 2010 case written

1    by Judge McKeague, and Judge May as a district judge was also

2    on the panel, along with Chief Judge Cole.

3         And in discussing this whole issue of comparing cases

4    where parties attempt to compare one case to another, or to a

5    group of cases, Judge McKeague notes, he cites the First

6    Circuit, "As the First Circuit has noted, such a comparison

7    between different singular sentences given by different judges

8    opens the door to endless rummaging by lawyers through

9    sentences in other cases, each side finding random examples to

10   support higher or lower sentences as their client's interest

11   dictates."

12        And that's the problem that I see many times, whether it

13   is in cases involving child pornography offenses or whether

14   it's cases that I've had recently, loss amount cases under

15   2B1.1 of the guidelines, where we're picking individual cases

16   and making comparisons.

17        And it's very difficult to do that because of those

18   subjective factors that go into sentences.  It's also difficult

19   to do unless the Court has all of the information that would be

20   available in a presentence report, as well as the arguments

21   that are made in sentencing proceedings that put the case in a

22   particular context.  And it brings the Court back to the issue

23   that the sentencing is individual.

24        So I don't find a lot of value with citation of one case

25   or 18 cases that have been decided by various judges in one

1  particular district, because they all do vary based upon the

2  individual characteristics and the 3553 factors, and decisions

3  that are made, subjective decisions that are made, value

4  judgments of district courts.

5      In this particular case, when we now get down to the

6  sentence to be imposed, it's my opinion that the only

7  appropriate sentence in this case would be a term of

8  incarceration of 360 months and a life term of supervision,

9  with conditions that will be announced that will provide

10  protection.

11      I believe that to impose a lesser sentence in terms of a

12  term of incarceration would unduly depreciate the very serious

13  conduct in this case.  It would not reflect the harm that's

14  occurred to this victim, to this minor victim.  It would not

15  reflect a relationship between the defendant and the victim.

16  It would not reflect the very serious nature of this offense

17  and the need to promote respect for the law.

18      And a lesser sentence would not provide deterrence,

19  general deterrence.  And it would not provide specific

20  deterrence, in my opinion, and would not provide the proper

21  protection.  So none of the factors I've listed, or any of the

22  others that I have not listed but I've already commented on,

23  would be served by a sentence less than 360 months.

24      Is a higher sentence warranted?  Yes.  Can the Court

25  impose a higher sentence?  No, and it will not.  I will follow

1   the law.  I will impose the sentence of 360 months in the case

2   because it's warranted, because it's appropriate under the

3   guidelines, and it's appropriate under the statutory sentencing

4   factors.

5        And a life term of supervision is also necessary,

6   appropriate, and warranted based upon the defendant's actions

7   in the case and the need to protect the victim.

8        One of the conditions of supervision will be that the

9   defendant not have any contact with the minor in the case, the

10  identified minor, the victim minor.  And that complies with the

11  letter that has been submitted by the victim and the need to

12  prevent further harm to the defendant's daughter.

13       And I am certainly mindful of the citation, the cases that

14  the government has provided to the Court with regard to some of

15  these conditions, including this restriction on contact with a

16  person's child, but it is necessary in this particular case.

17       I'll announce the sentence at this time.

18       It will be the sentence of this Court, pursuant to the

19  Sentencing Reform Act of 1984, as modified by the decisions in

20  *Booker* and *Fanfan*, and I do believe the following sentence is

21  sufficient but it's not greater than necessary to meet all of

22  the purposes of Title 18, Section 3553(a):

23       And therefore it will be the judgment of the Court that

24  the defendant, Larry Foley Junior, will be committed to the

25  custody of the Bureau of Prisons for a term of 360 months.

1          I will recommend to the Bureau of Prisons that the

2     defendant participate in the sex offender treatment program

3     during the period of incarceration.

4          I will also recommend that he undergo a medical health

5     evaluation and participate in any -- I'm sorry, mental health

6     evaluation and participate in any mental health treatment and

7     counseling programs that might be determined to be advisable

8     based upon the results of those examinations.

9          Upon release, he will be placed upon supervision for a

10    term of life as indicated.

11         And within 72 hours of release from the custody of the

12    Bureau of Prisons, he must report in person to the probation

13    office in the district in which he is released.

14         While on supervision, he may not commit another federal,

15    state, or local crime, and he must comply with the mandatory

16    and the standard conditions adopted by the Court, as well as

17    the -- and that will be set forth in the judgment and

18    commitment order.

19         He must also comply with the following special conditions:

20         The first will relate to sex offender treatment.  The

21    defendant will be required to participate in a program for

22    treatment of mental health and sexual disorders.  He must

23    undergo a sex offender risk assessment, psychosexual

24    evaluation, and/or other evaluation as needed.

25         And he will be subject to periodic polygraph examinations

1    and computer voice stress analysis testing, and that would be

2    at the discretion and the direction of the probation office.

3         And he must also follow the rules and regulations of the

4    sex offender treatment program as implemented by the probation

5    office.  This special condition is imposed because it is

6    necessary to provide constant monitoring for the defendant, as

7    well as to protect the public to avoid any future violations or

8    offenses by this defendant.

9         There will also be a residence restriction.  He will be

10   required to have his residence and employment preapproved by

11   the probation office and in compliance with state and local

12   law.  And that also is necessary to provide sufficient

13   protection to the public and supervision of the defendant.

14        There will be a restriction on contact with minors based

15   upon the defendant's actions in this case.  I do find that he

16   presents a continuing danger to minors at this point.  And, of

17   course, the Court may consider modifications during supervision

18   if it is established that he no longer presents a danger to

19   minors.

20        But at this point he will not be allowed to frequent,

21   volunteer, or work at any place where children under the age of

22   18 congregate.  And that would prevent him from acting as a

23   teacher or teacher's aide or in any capacity to any school.

24   That would also prevent him from frequenting, volunteering, or

25   working at places such as playgrounds, parks, daycare centers,

1    swimming pools, youth centers, video arcade facilities and

2    other facilities of that nature.  That will be unless it is

3    approved by the probation office.  And as indicated, he may not

4    have any contact with identified victims in this matter.

5         He must not associate or have verbal, written, telephonic,

6    or electronic communications with any person under the age of

7    18 without permission of the probation office.  And this would

8    not prohibit him from engaging with persons, or it doesn't

9    encompass persons under the age of 18 such as ticket vendors,

10   cashiers or waitresses or waiters and the like with whom he

11   must deal to obtain ordinary and usual commercial services.

12   But otherwise, there will be this continuing restriction based

13   upon the defendant's conduct in this case.  And based upon

14   counsel's own statements that the defendant is, quote, ill or

15   sick.

16        There will be a restriction on materials.  He may not

17   possess, view, listen to, or go to locations where any form of

18   pornography, sexually stimulating performances, or sexually

19   oriented materials, items or services are available.  He may

20   not possess or use a device capable of creating pictures or

21   videos without the approval of the probation office.  This is

22   not an absolute restriction on using a cell phone, but he must

23   have permission from the probation office to possess a phone

24   that does have the ability to take pictures.

25        Again, this is imposed based upon the defendant's danger

1   to minors as demonstrated by his actions in this particular

2   case.

3       He must also not rent or use a post office box or storage

4   facility without the approval of the probation office, and he

5   must register as a sex offender as prescribed by state law.

6       I'm also going to impose a restriction on his use of

7   computers.  And again, this is based upon his actions in this

8   particular case and the need to provide protection to potential

9   victims.

10      He may not possess or use a computer or any device with

11  access to any online computer service at any location,

12  including place of employment, without the prior written

13  approval of the probation office.  Now, this includes any

14  internet service provider, bulletin board system, or any public

15  or private network or email system.

16      He must also consent to the United States Probation Office

17  conducting unannounced examinations of his computer system, and

18  that would be any internal or external storage devices, and

19  that may include the retrieval and copying of all memory from

20  the hardware and software, and the removal of those systems for

21  the purpose of conducting a more thorough inspection.

22      And he must consent to having installed on his computer

23  any hardware/software to monitor his computer usage and prevent

24  access to particular materials.  And he must consent to

25  periodic inspection of any installed hardware and software to

1   ensure it's functioning properly.

2       He must also provide the probation office with accurate

3   information about his entire computer system, that would

4   include the hardware and software, as well as any internal or

5   external storage devices, and all passwords that he would use.

6   And he must abide by the rules of the computer restriction and

7   monitoring program.

8       The Court also finds it necessary to impose a search

9   condition to monitor the defendant's compliance with these

10  conditions and to ensure protection of the public.

11      He must submit his person, as well as any residence,

12  office, vehicle, or property under his control to a search

13  conducted by the probation office.  The failure to submit to a

14  search would be grounds for revocation of supervision, and he

15  must inform all residents that his premises would be subject to

16  a search according to this condition.

17      He must also provide the probation office with access to

18  any requested financial information.  This special condition

19  for financial disclosure is included as a means to allow the

20  probation office to monitor his purchases of electronics or

21  peripheral devices, as well as any internet service either

22  subscribed to or accessed to by him.

23      Restitution is indicated for the identified victim, will

24  be determined at a date that will be set in just a moment.

25  That amount, the judgment will reflect that the amount of

1    restitution to be determined in the case will be due

2    immediately, but if there is any balance that's owed upon him

3    being placed with the Bureau of Prisons, then he would be

4    required to pay that balance pursuant to the Federal Bureau of

5    Prisons Inmate Financial Responsibility Program.

6        And any outstanding balance that would not be paid would

7    be due in accordance with an installment payment schedule that

8    would be sent by subsequent orders of the court.

9        Now, I will enter an amended judgment to reflect

10   restitution after that hearing has been held at the request of

11   the parties.

12       I've given my reasons for not imposing a fine or a special

13   assessment.

14       Under the Domestic Trafficking Victims' Fund, that's the

15   JVTA, or under the Amy, Vicky, Andy Child Pornography Victims

16   Act, that's the AVAA, my concern again is with restitution to

17   the victim and the defendant's current financial condition and

18   ability to pay going forward.

19       He will also be required to forfeit interest in certain

20   identified property.  And yesterday, I did enter a preliminary

21   judgment of forfeiture to reflect those items.  They will also

22   be included in the judgment to be entered in the case.

23       They include a Samsung Galaxy S9 cellphone, another

24   Samsung cell phone -- two actually, two additional phones.

25   Amazon Fire tablet.  Samsung tablet.  Samsung Galaxy edge

1    cellphone.  Dell laptop.  SanDisk flash drive.  Samsung Galaxy

2    S9 edge cellphone.  Chromebook laptop.  HP Pavilion laptop.

3    Compaq Presario laptop, and all software and peripherals

4    associated with that property.  Again, that will be reflected

5    in the judgment to be entered in this matter.

6         Turning to the plea agreement, the defendant entered a

7    guilty plea to one count of a superceding indictment.  In his

8    plea agreement, he waived the right to appeal his guilty plea

9    and conviction.  He also waived the right to appeal any

10   determination made by the Court at sentencing, with the sole

11   exception that he reserved the right to appeal any aspect of

12   the sentence, if the length of the term of imprisonment

13   exceeded either the higher of the advisory guideline range as

14   determined by the Court, or the statutory maximum penalty in

15   the case.  Both were 360 months.

16        The Court did not impose a term of incarceration beyond

17   the statutory maximum or the guideline range.  And therefore,

18   under this provision, I do find that the defendant has waived

19   the right to appeal the guilty plea, conviction, and the

20   sentence.  And therefore I will not ask the clerk to advise him

21   of those appellate rights.

22        However, I will note for the record that in the event that

23   either party believes that this Court has committed any error

24   that would not be subject to the waiver and would be subject to

25   appeal, that any notice of appeal would have to be filed within

1   14 days of the date that the judgment is filed.

2       Also, in the event that the defendant believed that there

3   were issues subject to appeal and not subject to the waiver, he

4   could seek to appeal in forma pauperis, which means he could

5   seek to appeal without payment of costs or expenses, and he

6   could also seek to have counsel appointed to represent him in

7   connection with any such appeal.

8       Now, at this time I will ask the attorneys to state any

9   objections that they may have to the sentence that has been

10  announced, and that would include conditions of supervised

11  release.

12      Next, the parties should state any objections under *United*

13  *States versus Bostic*, which is a decision from the Sixth

14  Circuit.  Under that decision, any objection not previously

15  raised should be raised at this time so it may be addressed by

16  the Court to be properly preserved for review on appeal.

17      Finally, if the parties would like the Court to make

18  additional findings to support any of the determinations that

19  have been announced here today, I will certainly do so if

20  requested.

21      Mr. Marye, I'll begin with you.

22      MR. MARYE:  Yes, Your Honor.  The United States has no

23  objections, including to the imposition of the terms of

24  supervised release.

25      There are no objections under *United States versus Bostic*,

1    nor does the United States request the Court to make any

2    further findings of fact.

3        Thank you, Judge.

4        THE COURT:  All right.  Thank you.

5        Mr. Carman.

6        MR. CARMAN:  Judge, please, while I'm sure Larry would

7    have liked a lower sentence, there are no objections in any of

8    that regard that haven't previously been raised.

9        THE COURT:  All right.  Thank you.

10        Let's turn now to a date for a restitution hearing in this

11    case.  Mr. Marye, I'm hopeful that jury trials will resume in

12    this district around the middle of January, but I'm not

13    optimistic.

14        MR. MARYE:  I understand.

15        THE COURT:  So I'm looking at a date in January,

16    January 25th, for a restitution hearing, if that's available on

17    your calendar and Mr. Carman's calendar.

18        MR. MARYE:  I currently have a trial scheduled, although I

19    think that one probably will resolve without the necessity of a

20    trial that date.  If we could maybe move it, maybe the 27th or

21    8th or 9th.  Or I can always file a motion to ask to continue

22    it if that other case go to trial.  I really do think it will

23    resolve, Judge.

24        THE COURT:  All right.  Why don't we tentatively schedule

25    the matter -- I want to check with Mr. Carman and his calendar

1    and his availability.  Why don't we look at the 25th first.

2         Mr. Carman, how does that look on your calendar?

3         MR. CARMAN:  It's fine, Your Honor.  Thank you.

4         THE COURT:  Would the parties prefer a morning or

5    afternoon session?

6         MR. MARYE:  No preference.

7         MR. CARMAN:  Prefer afternoon, Your Honor.

8         THE COURT:  Afternoon?

9         1:00 p.m.  Will that give us sufficient time to resolve

10   any issues?  I'll set aside the afternoon.

11        MR. MARYE:  Yes, Your Honor.  I don't think it will take

12   fairly long for the hearing.  If we are able to reach some

13   agreement beforehand, we will notify the Court.

14        THE COURT:  All right.  We'll schedule this for the

15   restitution determination on Monday, January 25th, 2021,

16   beginning at 1:00 p.m., subject to intervening orders of the

17   Court.

18        Do we have any other issues to take up in the case at this

19   time?

20        Mr. Marye, any additional issues for the government?

21        MR. MARYE:  No, thank you, Your Honor.

22        THE COURT:  All right.

23        MR. CARMAN:  None, Your Honor.

24        THE COURT:  All right.

25        I do acknowledge Special Agent Kidd's presence here today

1    and I appreciate you being here available for this hearing as

2    well.

3         Let me just make a note in closing to the victim in the

4    case.  These cases are very difficult.  I wish I could say this

5    were the only case in which these type of events take place,

6    but it's not.

7         These matters do happen from time to time, and I'm very

8    hopeful that the victim in the case will be able to overcome

9    these issues and move forward.  She's certainly an intelligent,

10   beautiful young lady, and she has hopefully a long, productive

11   life ahead of her and she can overcome this.  I'm optimistic

12   that she'll be able to do that.

13        We'll be in recess.

14        (Proceedings concluded at 10:49 a.m.)

15

16                     C E R T I F I C A T E

17          I, Linda S. Mullen, RDR, CRR, do hereby certify that

18   the foregoing is a correct transcript from the record of

19   proceedings in this above-entitled matter.

20
     /s/Linda S. Mullen              December 14, 2020
21   Linda S. Mullen, RDR, CRR       Date of Certification
     Official Court Reporter
22

23

24

25