1                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
2                    CENTRAL DIVISION AT LEXINGTON


3
                              - - -
4    UNITED STATES OF AMERICA,        .   Case No. 5:20-CR-00025
                                      .
5             Plaintiff,              .
                                      .   Lexington, Kentucky
6         - v -                       .
                                      .   Monday, January 25, 2020
7    LARRY D. FOLEY JUNIOR,           .   1:00 p.m.
              Defendant.              .
8                                         - - -

9         TRANSCRIPT OF RESTITUTION HEARING PROCEEDINGS
              BEFORE THE HONORABLE DANNY C. REEVES
10             UNITED STATES DISTRICT COURT JUDGE

11                            - - -

12

13   For the United States:     DAVID A. MARYE, ESQ.
                                RAJBIR DATTA, ESQ.
14                              Assistant U.S. Attorneys
                                United States Attorney's Office
15                              260 West Vine Street, Suite 300
                                Lexington, Kentucky  40507
16
     For the Defendant:         WILLIAM DANIEL CARMAN, ESQ.
17                              111 Church Street
                                Lexington, Kentucky  40507
18
     Court Reporter:            LINDA S. MULLEN, RDR, CRR
19                              Official Court Reporter
                                101 Barr Street
20                              Lexington, Kentucky  40507

21

22   Proceedings recorded by mechanical stenography, transcript
     produced by computer.
23

24

25

1          (Proceedings in open court, January 25, 2021, 1:00 p.m.)

2          THE COURT:  Thank you.

3          Madam Clerk, would you call the matter scheduled for 1:00,

4     please?

5          THE CLERK:  Yes, Your Honor.  Lexington Criminal Action

6     Number 20-25, United States of America versus Larry D. Foley

7     Junior, called for restitution hearing.

8          THE COURT:  Thank you.

9          Would counsel state their appearances, please.  Mr. Marye.

10         MR. MARYE:  Yes, Your Honor.  Good afternoon, David Marye

11    and Rajbir Datta on behalf of the United States.

12         THE COURT:  All right.  Thank you.

13         Mr. Carman.

14         MR. CARMAN:  Good afternoon, Your Honor, if it please the

15    Court.  Dan Carman here for Larry Foley Junior, seated to my

16    right.

17         THE COURT:  Thank you.

18         This matter is scheduled for a hearing to determine

19    restitution under Title 18, Section 2959.

20         Are the parties ready to proceed, Mr. Marye?

21         MR. MARYE:  Yes, Your Honor.

22         THE COURT:  I understand the government has witnesses and

23    evidence to produce during the hearing; is that accurate?

24         MR. MARYE:  Yes, Your Honor, just one witness.

25         THE COURT:  And, Mr. Carman, are you ready to proceed?

SARAH FOLEY - DIRECT

1    MR. CARMAN:  Yes, Your Honor.

2    THE COURT:  Thank you.

3    Mr. Marye, you may proceed.

4    MR. MARYE:  United States would call Sarah Foley.

5    THE COURT:  Thank you.

6    **SARAH FOLEY, GOVERNMENT WITNESS, SWORN**

7    THE COURT:  Thank you.

8    Mr. Marye, you may proceed.

9                          SARAH FOLEY

10                        DIRECT EXAMINATION

11   BY MR. MARYE:

12   Q.   Please tell the Court your name and what town do you

13   reside.

14   A.   Sarah Foley, Berea, Kentucky.

15   Q.   And, Ms. Foley, what is your relationship to the

16   defendant, Larry Foley?

17   A.   My soon-to-be ex-husband.

18   Q.   And do you see him here in the courtroom today?

19   A.   Yes.

20   Q.   Point to where he is seated, please.

21   A.   Next to Mr. Carman.

22   THE COURT:  The record will reflect the witness has

23   identified the defendant.

24   MR. MARYE:  Thank you, Your Honor.

25   BY MR. MARYE:

4

SARAH FOLEY - DIRECT

1  Q.   And, Ms. Foley, are you the mother of the minor victim in

2  this case?

3  A.   Yes, sir.

4       (The following portion is sealed and contained under

5  separate cover.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

SARAH FOLEY - DIRECT

1          (The preceding portion was sealed and is contained under

2     separate cover.)

3     BY MR. MARYE:

4     Q.   After the FBI executed the federal search warrant and

5     after he was arrested last year, I think it was January 6th,

6     did you at some point become aware that he was producing child

7     pornography and that he had actually sexually abused your minor

8     daughter?

9     A.   Yes.

10    Q.   And did you have occasion to then seek out some sort of

11    psychiatric or mental health counseling for your daughter?

12    A.   Yes.

13    Q.   Where did you have occasion to take her?

14    A.   We went to Mustard Tree Counseling.

15    Q.   I'm sorry?

16    A.   Mustard Tree Counseling.

17    Q.   Is that in Richmond, Kentucky?

18    A.   Yes, sir.

19    Q.   And both Berea and Richmond are in Madison County,

20    correct?

21    A.   Correct.

22         MR. MARYE:  Your Honor, may I go to the Elmo to show the

23    exhibits?

24         THE COURT:  Yes, sir.

25    BY MR. MARYE:

7

SARAH FOLEY - DIRECT

1   Q.   Ms. Foley, can you see what at least -- there's Government
2   Exhibit A, and then I'll move it down so you can see the top.
3   A.   Yes.
4   Q.   All right.  And can you see that to make out what that
5   document is?
6   A.   Yes.
7   Q.   What is that?
8   A.   That's the statement from her counselor for the sessions
9   she has received.
10  Q.   And does that cover various sessions that occurred
11  beginning February 7th of 2020, through, it looks like,
12  November 3rd of 2020?
13  A.   Correct.
14  Q.   And does it show at the bottom of that Exhibit A the total
15  charges for the counseling rendered during 2020 for your minor
16  daughter?
17  A.   Yes.
18  Q.   What is that amount?
19  A.   $1,125.
20       MR. MARYE:  I would ask that Exhibit A be introduced at
21  this time.
22       THE COURT:  Any objection?
23       MR. CARMAN:  None, Your Honor.
24       THE COURT:  Exhibit A will be admitted.
25          (Government Exhibit A was admitted.)

8

SARAH FOLEY - DIRECT

1    BY MR. MARYE:

2    Q.   Ms. Foley, do you see what's marked as Government

3    Exhibit B at the bottom there?

4    A.   Yes.

5    Q.   Now move it up a little bit so you can see the document.

6    And what is that document?

7    A.   That is from her counselor recommending -- it shows her

8    diagnoses and what she's had for counseling and what she

9    recommends in the future.

10   Q.   That document is dated what?

11   A.   January 20th, 2021.

12   Q.   And in that document, does Ms. Kidd -- is she the

13   counselor that your daughter was seeing that we just showed

14   from the charges in Exhibit A?

15   A.   Yes.

16   Q.   And does she indicate that your daughter has experienced

17   significant trauma as a result of the abuse that she suffered

18   at the hands of her father?

19   A.   Yes.

20   Q.   And does it indicate that in Ms. Kidd's professional

21   opinion, your daughter could benefit from professional

22   psychotherapy throughout her life?

23   A.   Yes.

24   Q.   But then specifically she indicates it's difficult to

25   recommend a set number of sessions, but she indicates there a

9

SARAH FOLEY - DIRECT

1  minimum of weekly for at least one year; is that correct?

2  A.   Correct.

3  Q.   And then down there does it show her current rate per

4  session of $120?

5  A.   Yes.

6  Q.   And now in Government Exhibit A, the rate was only $75.

7  Can you explain the discrepancy or difference there?

8  A.   Yes, her current rate at that time was $100 a session, and

9  she gave us a discount based on our traumatic experience.

10  Q.   And during 2020, Ms. Kidd, she did not have the LPCC

11  credential and she was having to work under someone who did as

12  a supervisor; is that correct?

13  A.   That's correct.

14  Q.   And has she now been credentialed and received the LPCC

15  and can do this now on her own in the future?

16  A.   Yes.

17       MR. MARYE:  I would ask that Exhibit B be finally

18  introduced, Your Honor.

19       THE COURT:  Any objection to the admission of Exhibit B?

20       MR. CARMAN:  No, Your Honor.

21       THE COURT:  Exhibit B is admitted.

22          (Government Exhibit B was admitted.)

23       (The following portion is sealed and contained under

24  separate cover.)

25

SARAH FOLEY - DIRECT

1        (The preceding portion was sealed and is contained under

2    separate cover.)

3    BY MR. MARYE:

4    Q.    So the Children's Advocacy Center here in Lexington, she

5    had two forensic interviews there and then one medical

6    examination; is that right?

7    A.    Correct.

8    Q.    And one forensic interview at the FBI office; is that

9    correct?

10   A.    Yes.

11   Q.    Those mileage -- you gave the mileage, and then we

12   calculated the federal mileage reimbursement rate times the

13   number of miles; is that right?

14   A.    Uh-huh.

15        MR. MARYE:  Your Honor, I would ask that Exhibit C be

16   finally introduced.

17        THE COURT:  Any objection?

18        MR. CARMAN:  No, sir.

19        THE COURT:  Exhibit C will be admitted.

20           (Government Exhibit C was admitted.)

21   BY MR. MARYE:

22   Q.    And then finally Government Exhibit D.  Ms. Foley, you

23   obtained all these documents.  We met before today, right?

24   A.    Yes.

25   Q.    We talked about this.  And so we have past sessions in

12

SARAH FOLEY - DIRECT

1   this chart showing $1,125, which is from Exhibit A; and then

2   the mileage from Exhibit C; and then future sessions at 120.

3   Had your daughter recently indicated to you a little bit more

4   willingness or interest in receiving the counseling sessions?

5   A.   Yes.

6   Q.   During 2020, at times was she rather hesitant or reticent

7   about actually going and participating in those sessions?

8   A.   She very much was.

9   Q.   Have you had to really work to persuade her that it was

10  something important for her last year?

11  A.   I think she just finally has realized.  She was in denial

12  for so long, once she realized what's really happened to her,

13  she sees the need for therapy.

14  Q.   And has she recently told you something in terms of her

15  willingness or more interest in attending future counseling

16  sessions?

17  A.   Yes, sir.

18  Q.   And what was that that she told you?

19  A.   That she wants to start going once weekly -- she just came

20  up with this off the top of her head.  Once weekly for so many

21  months, and then she wants to go twice a month for so many

22  months.  And then start adding that to just monthly, eventually

23  to try to taper it off.

24  Q.   And is what she has indicated, her willingness, detailed

25  there in the chart about her willingness to attend after her

13

SARAH FOLEY - DIRECT

1   birthday, so once a week for six months, twice a week for six

2   months, and then followed by monthly sessions; is that right?

3   A.   Yes.

4   Q.   And then in this chart, ended up per the recommendation of

5   the counselor, we indicated we would just seek counseling or

6   reimbursement for the one year for weekly sessions; is that

7   right?

8   A.   Yes.

9   Q.   Okay.  And then there's 12 monthly sessions for the next

10  year after that, correct?

11  A.   Yes.

12  Q.   And then 12 monthly sessions times four, four additional

13  years, which would get her through her 18th birthday; is

14  that --

15  A.   Yes, that's correct.

16  Q.   So then did you have occasion when we got together to

17  review these documents to actually add up the figures from the

18  future sessions, the 13,040; the past sessions, the 1,125; and

19  then the mileage, 192.62?

20  A.   Yes.

21  Q.   And that is the grand total there on Exhibit D?

22  A.   Uh-huh.  Yes.

23      MR. MARYE:  Your Honor, I would ask that Exhibit D be

24  finally introduced at this time.

25      THE COURT:  Any objection?

14

SARAH FOLEY - CROSS

1      MR. CARMAN:  No, Your Honor.

2      THE COURT:  Exhibit D will be admitted.

3          (Government Exhibit D was admitted.)

4      MR. MARYE:  If I could have just one moment, Judge?

5      THE COURT:  Yes, sir.

6      MR. MARYE:  Your Honor, that's all the questions I have of

7  Ms. Foley.

8      I have unredacted exhibits of A and B, if the Court wants

9  those, for your benefit.

10     And then I would tender the redacted A through D, just

11 introduce to Madam Clerk, if I may.

12     THE COURT:  Yes, sir.  You can bring those up to the

13 clerk, yes, sir.  All right.  Thank you.

14     MR. MARYE:  That is all the questions I have at this time,

15 Judge.  Thank you.

16     THE COURT:  Thank you.

17     Mr. Carman.

18     MR. CARMAN:  Thank you, Your Honor.

19                        CROSS-EXAMINATION

20 BY MR. CARMAN:

21 Q.  Ms. Foley, just a couple of questions.  You've testified

22 about costs that have been incurred by your daughter's therapy,

23 past and future, right?

24 A.  Yes.

25 Q.  Concerning costs, does your family, that is -- when I say

SARAH FOLEY - CROSS

1  "your family," I mean you and your daughter, do you all have

2  health insurance?

3  A.   We do have health insurance from TriCare.

4  Q.   Concerning the therapy that's been described through

5  Mustard Tree Counseling and Therapist Kidd, have any of

6  those -- any of that therapy, has that been communicated about

7  with TriCare or any other health insurance provider?

8  A.   They do not take TriCare insurance there.  I went with the

9  counselor that was most recommended and most benefited our

10 daughter.  And there are very limited counselors approved

11 through TriCare in our area that I was willing to go to.

12 Q.   So to make sure I understand, that particular, where she's

13 been going, just doesn't take TriCare?

14 A.   Correct.

15 Q.   And so in other words, it's an out-of-pocket --

16 A.   Correct.

17 Q.   -- expense?

18 A.   I have looked at other options.  But at this point our

19 daughter is very resistant to change.  She does not want to

20 change counselors.

21 Q.   Sure.

22       MR. CARMAN:  One moment, Judge.  My client wants to ask me

23 a quick question.

24       THE COURT:  Yes, sir.

25 BY MR. CARMAN:

SARAH FOLEY - CROSS

1  Q.   I'm almost finished, Ms. Foley.

2       Have you been able to -- while the counseling center

3  doesn't take TriCare, have you been able to submit the bills to

4  TriCare for a partial reimbursement for your family?

5  A.   I was not aware I could do that.

6  Q.   Right.

7       MR. CARMAN:  Judge, those are all the questions I think I

8  have.

9       THE COURT:  All right.  Thank you.

10      Mr. Marye, any redirect?

11      MR. MARYE:  No, thank you, Judge.  That's all.

12      THE COURT:  All right.  Thank you, ma'am.  You may step

13 down.

14      I'll note for the parties' benefit under 2259, subsection

15 (b)(4), that "the issuance of a restitution order under this

16 section is mandatory.  A court may not decline to issue an

17 order under this section because of" either "the economic

18 circumstances of the defendant; or the fact that a victim has,

19 or is entitled to, receive compensation for his or her injuries

20 from the proceeds of insurance or...other source."

21      So I find the last series of questions by counsel to be

22 not relevant to this proceeding.

23      Mr. Marye, do you have additional witnesses to present?

24      MR. MARYE:  No, Your Honor.  That's all.

25      THE COURT:  Thank you.

1      Mr. Carman, any witnesses you would like to offer?

2      MR. CARMAN:  No, Your Honor.

3      THE COURT:  All right.  Thank you.

4      Mr. Marye, would you like to summarize your position?

5      MR. MARYE:  Yes, Your Honor.  One reason this letter, I

6  think, from Aimee Kidd, Government Exhibit B, is dated so

7  recently is that I think she was really having some

8  difficulties in coming up with a set number of sessions.  And

9  we had conversations, especially through Ms. Parker, our victim

10  coordinator, and Ms. Kidd, you know, finally was able to do

11  that.

12      As can you see, in her professional opinion, the minor

13  daughter could benefit from sessions for the remainder of her

14  life.  I think the Court can certainly take judicial notice of

15  the impact these kinds of offenses have on victims in trying

16  to -- you know, I guess we took a fairly conservative approach.

17  We felt like even though the counselor only requested or

18  indicated at a minimum the weekly sessions for a year, that it

19  would certainly be totally reasonable and within the Court's

20  authority to order restitution at least through the minor

21  victim's 18th birthday.  I believe the Court really could

22  certainly order more in the future.

23      THE COURT:  Well, isn't there a provision of 2259 that

24  allows an individual, a victim to seek, as an alternative, a

25  one-time amount of approximately $35,000, which is subject to

1    some calculations under the Consumer Price Index, but under

2    subsection (d)(1)(D)?

3         MR. MARYE:  I'm sorry, (d)(1)(D), is that --

4         THE COURT:  Yes, sir.  If you're looking at the revised

5    edition of the 2020 criminal code, is that the volume that you

6    have?

7         MR. MARYE:  Yes, sir.

8         THE COURT:  Page 857.

9         MR. MARYE:  Yes, sir.

10        THE COURT:  It's under "defined monetary assistance."

11        MR. MARYE:  Yes, sir.

12        THE COURT:  So in essence this is substantially less than

13   a claim that could be made under that section?

14        MR. MARYE:  Absolutely, Judge, it is.  And I would -- like

15   I say, I would ask the Court to certainly strongly consider

16   ordering it beyond the victim's 18th birthday for a number of

17   years.

18        THE COURT:  I'm not sure I can really do that based on the

19   testimony that's been presented here today, as much as the

20   claim -- according to the victim, she's essentially limited her

21   claim to the amount that's set forth in Exhibit D, I believe.

22        MR. MARYE:  Yes, sir.  We would ask, of course, that the

23   Court enter a judgment in that amount that's in Government

24   Exhibit D.

25        THE COURT:  All right.

1        MR. MARYE:  That it be made payable immediately, and that

2   it be reflected in an amended judgment of conviction of

3   Mr. Foley.

4        THE COURT:  All right.  Thank you.

5        Mr. Carman.

6        MR. CARMAN:  Judge, please, under the circumstances and

7   given the testimony that's been presented today and at other

8   hearings, and in accordance with the comments the Court made,

9   we're not in any position to object to the restitution as

10  requested by the government.

11       THE COURT:  All right.  Thank you.

12       I'll make some findings to support the amended judgment

13  being entered based upon mandatory restitution under 2259.  The

14  identity of the victim is not challenged in this particular

15  matter and the Court may take notice of the victim's identity

16  based upon the judgment that's previously entered in the case,

17  as well as testimony that's been presented here today.

18       The Court does not believe it's able to take judicial

19  notice that this defendant [sic] would have additional losses

20  beyond her 18th birthday.  And as indicated based upon the

21  exhibits that have been submitted, the victim does appear to

22  limit her damage claim, amount of restitution, to services that

23  would be provided, necessary services, up to her 18th birthday.

24       When we look at the type of loss that may be recovered

25  under the statute, of course I just mentioned a moment ago that

1   this would be mandatory restitution.   And the Court may not

2   decline to issue an order of restitution either because of the

3   economic circumstances of the defendant or the fact that the

4   victim has or may be entitled to receive compensation for her

5   injuries from the proceeds of insurance or any other source.

6       So the Court would not reduce any award based upon either

7   an insurance claim or an insurance payment or the possibility

8   of such occurring in the future.

9       When we look at the type of services which may be

10  compensated under subsection (c)(2), victim's losses that are

11  the proximate result of the defendant's activities in the case,

12  they do include "medical services relating to physical,

13  psychiatric or psychological care."

14      The second category is "physical and occupational therapy

15  or rehabilitation."

16      (C) would be "necessary transportation, temporary housing

17  and child care expenses."

18      (D) is "lost income."

19      (E) is "reasonable attorneys' fees, as well as other costs

20  incurred."

21      (F) would be "any other relevant losses incurred by the

22  victim."

23      The losses that are sought in this particular case would

24  fall within those categories that I have just summarized.

25      First, the Court looks at whether the amount that has been

1    sought for counseling and psychological services that are

2    reflected in the first two exhibits would be reasonable.  And I

3    do find that both the amount reflected on Exhibit A, as well as

4    B, the $120 an hour and earlier the $75 an hour, is entirely

5    reasonable based upon the nature of the services provided.

6         And likewise, the number of sessions that are sought would

7    likewise be a very reasonable request in light of the nature of

8    the offenses against the victim by this defendant.

9         So I do find that the categories that are reflected in

10   Exhibit D with regard to past sessions of $1,125 would be

11   reasonable expenses, as well as the sum of $13,440 for future

12   sessions at the higher rate of $120 an hour would be entirely

13   reasonable here.

14        And the Court also finds that the additional sum for

15   mileage that has been calculated based upon the federal

16   reimbursement rate and the miles that have been incurred as

17   reflected in, I believe it's Exhibit C, would be appropriate

18   and reimbursable under the statutory section that has been

19   referenced.

20        Again, while the defendant [sic] might seek or could seek

21   or could have sought reimbursement under other provisions

22   seeking a greater sum, I do find that the amount that has been

23   sought is a very conservative number based upon the violations

24   that the defendant has been forced to endure at the hands of

25   the defendant, and the amounts are compensable under the

 1   statute, Title 18, Section 2259.

 2        And I find that the defendant has -- excuse me -- the

 3   government has proven these amounts beyond the standard which

 4   is required, which in this particular matter is the

 5   preponderance of the evidence.  So I do find the amount sought,

 6   $14,757.62, is fully compensable and the Court will enter an

 7   amended judgment that will reflect restitution for the

 8   identified victim in that amount.

 9        Likewise, I will direct that the court reporter will file

10   any portion of the transcript under seal that does identify the

11   minor victim either by name or reference to her birth date to

12   protect or to provide additional protection of her privacy with

13   respect to this matter.

14        The judgment, the amended judgment to be prepared and to

15   be entered in the case will also indicate that the amount of

16   restitution will be subject to interest.  The Court is not

17   waiving interest in this amount.

18        And it will reflect that the defendant is to pay the full

19   sum that will be due and owing.  In the event that he's unable

20   to pay the full amount that has been awarded by the Court, then

21   he is to pay that amount in accordance with the Federal Bureau

22   of Prisons' Inmate Financial Responsibility Program.

23        And then if there is any balance that might be owed if and

24   when he is released from the period of incarceration, then the

25   Court at that time would set an installment payment schedule

1   that would allow the full remaining balance to be paid, which

2   will, again, as I indicated, include interest on the amount of

3   restitution.

4        Are there any other issues that are unresolved in the case

5   or that need to be taken up at this time?

6        MR. MARYE:  Just one second, Judge.

7        THE COURT:  Yes, sir.

8        MR. MARYE:  I'm sorry, do you need to --

9        THE COURT:  Mr. Marye, you're first.

10        MR. MARYE:  It was -- was that ordered payable immediately

11   but then subject to the schedule -- okay, I didn't hear --

12        THE COURT:  Yes.  I assume the defendant will not be able

13   to pay the amount immediately, but the judgment will reflect

14   that it's due immediately.  But if he's unable to pay it, then

15   it's to be paid in accordance with the Bureau of Prisons'

16   Inmate Financial Responsibility Program.

17        MR. MARYE:  Very good.

18        THE COURT:  And then any balance that would be remaining

19   would be paid in accordance with an installment payment

20   schedule to be set by subsequent order.

21        MR. MARYE:  I missed the first part.

22        THE COURT:  Mr. Carman.

23        MR. CARMAN:  I believe that's all, Your Honor.  Larry and

24   I were just discussing that generally all of his assets are

25   tied up in the domestic relations matter in Madison County.

1   Whether this can be paid that way is a little bit opaque to me

2   at this point, but I have talked to him and that I'll be in

3   touch with his divorce counsel about that.

4       THE COURT:  All right.  Yes, sir.  I don't have any

5   jurisdiction over that proceeding.  And the Court can only

6   require payment of a judgment, it's not encumbered by -- or

7   it's not subject to -- the Court doesn't place any encumbrances

8   on property.  Obviously, the government may attempt to do that

9   if there is property located, but the Court does not identify

10  property but just identifies the judgment amount that is

11  payable by the defendant.

12      Madam Clerk, I'll return these exhibits to you.  Two of

13  those are, I believe, redacted.  The ones that are unredacted

14  will be filed in the record under seal, and the redacted

15  versions will be filed in the record as Exhibits A through D.

16      All right.  Thank you, Counsel.  If there are any other

17  issues to be taken up in the case, we will be in recess.

18      (Proceedings concluded at 1:28 p.m.)

19

20                    C E R T I F I C A T E

21      I, Linda S. Mullen, RDR, CRR, do hereby certify that

22  the foregoing is a correct transcript from the record of

23  proceedings in this above-entitled matter.

24  /s/Linda S. Mullen              January 25, 2021
    Linda S. Mullen, RDR, CRR       Date of Certification
25  Official Court Reporter